472-06/PJG/PLS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PHOENIX BULK CARRIERS LTD.,                                         **06 CV   9956 (MGC)**

                                    Plaintiff,

                          -against -

MINERAL TRANSPORTATION LIMITED
a/k/a MINTRANS LIMITED, LI WEI,
MINERALS TRANSPORTATION LIMITED, and
MINERAL RESOURCES (CHINA) COMPANY
LIMITED

                                    Defendants.
-----------------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTIONS TO
## VACATE ATTACHMENT AND TO QUASH SUBPOENAS


                                    FREEHILL HOGAN & MAHAR, LLP
                                    Attorneys for Plaintiff
                                    80 Pine Street
                                    New York, NY  10005
                                    (212) 425-1900
                                    (212) 425-1901 fax

Of Counsel:

Peter J. Gutowski (PG 2200)
Manuel A. Molina (MM 1017)

NYDOCS1/279071.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND FACTS............................................................................................................... 1

POINT I

AN ATTACHMENT CANNOT BE VACATED IN CIRCUMSTANCES WHERE
A CLAIMANT DEMONSTRATES A REASONABLE BASIS FOR INQUIRY
AS TO THE TRUE EXISTENCE OF THE DEFENDANT .......................................................... 5

POINT II

THE EVIDENCE THUS FAR ESTABLISHS THAT PHOENIX HAS MADE
OUT ITS PRIMA FACIE BURDEN OF DEMONSTRATING A SUCCESSOR IN
INTEREST and/or ALTER EGO RELATIONSHIP, WHICH SHOWING
WARRANTS THE MAINTENANCE OF THE ATTACHMENT AND THE
TAKING OF DISCOVERY ........................................................................................................... 8

POINT III

THE MOTION TO QUASH THE SUBPOENAS IS MERITLESS AND IT IS
NOTHING BUT AN ATTEMPT TO PREVENT THIS COURT FROM
DISCOVERING HOW LI WEI HAS ORCHESTRATED A CORPORATE
SHELL GAME TO AVOID LIABILITIES ................................................................................. 15

CONCLUSION ........................................................................................................................... 18

i

## PRELIMINARY STATEMENT

This Memorandum is submitted on behalf of PHOENIX BULK CARRIERS LTD. (hereinafter "Phoenix") in opposition to the Orders to Show Cause brought on by Defendant MINTRANS LTD. to vacate the subpoenas served in this action and to vacate the attachment. For the reasons set forth more fully below, the subpoenas are valid and should be enforced, and the attachment should be maintained in all respects.

## BACKGROUND FACTS

As outlined in the accompanying Declaration of Frank Yu, and as discussed more fully in Plaintiff Phoenix's Amended Complaint, the situation is far more complex than MINTRANS LTD. would have this Court believe in the superficial submission it made in support of its motion to vacate the attachment. Far from a simple mistake regarding corporate identity, the true situation here involves a very carefully orchestrated corporate subterfuge by LI WEI under which she has managed to carry on a shipping business under the banner of a company generally referred to as MTL while shedding debt for contracts she herself entered into.

In support of the Motion to Vacate, LI WEI takes the position that she had previously been employed by a company called MINERAL TRANSPORTATION LIMITED, but had left that company's employ in June of 2006. Thus, she argues, her new company, MINTRANS LTD, should not be held responsible for contracts she entered into while at MTL. (Li Wei Declaration ["Wei Decl."], ¶5). In support of this proposition, she, and her Hong Kong counsel Ronald Lee, submit various corporate documents which they claim attest to this situation. (Declaration of Ronald Lee ["Lee Decl,"], ¶3, Ex. B). In point of fact, the proposition is not true nor do those documents support it.

The first document submitted in both Declarations is a Hong Kong corporate document showing the formation of a company called MINTRANS LTD. in April of 2006. By all accounts, this corporation does indeed appear to have been formed by Li Wei last year and Phoenix's own independent investigation confirms it, *but this is the extent of the accuracy of the defendant's submission*

Insofar as her prior employer is concerned, LI WEI and her English counsel state under oath that she previously worked for a company called MINERAL TRANSPORTATION LIMITED. In support of this supposed fact, they refer the Court to the additional exhibits attached to the Ronald Lee Declaration. Those documents, however, show no such thing. Instead, they identify a company called **Mineral Resources (China) Company Ltd.** Strangely, nowhere does either LI WEI or Ronald Lee refer to this entity in their declarations; and in any event, they provide absolutely no support for her claim to have been an employee of a company called MINERAL TRANSPORTATION LIMITED - the entity she claims to have worked for through June of 2006.

The charter parties which form the subject matter of this litigation were negotiated and concluded by LI WEI in 2003 and 2004 when she was operating out of a company generally referred to as "MTL". (See Declaration of Frank Yu ("Yu Decl."), ¶¶ 3-8). The actual name of the charterer, as identified by LI WEI in negotiating and executing these two contracts, was MINERAL TRANSPORTATION LIMITED which matches the name of the company she now claims to have worked for. (See, Exhibits A and B to Amended Complaint.) The problem she has, however, is there are no documents to attest to any corporation in existence in this name, and Phoenix' independent investigation with the Hong Kong corporate registry confirms that

there has never been a corporate entity in China with that name.[1]  As such, the evidence now available, coupled with Li Wei's own admissions, confirm that when she chartered the vessels under the name of the fictitious entity MINERAL TRANSPORTATION LIMITED, she was trading for her own account, while simultaneously binding her undisclosed principals as well (see discussion below).

Turning to the latest corporate creation by Li Wei, MINTRANS LTD.,  the evidence now shows that as her scheme was being uncovered by the shareholders of MTL, she hastily created yet another corporate shell (MINTRANS LTD.) which identifies her as the sole shareholder, and which was grossly undercapitalized.  (See Ex. B to accompanying Gutowski Declaration showing "HK$10,000.00," or $1,279.61, in total capital.)  Interestingly, LI WEI omitted the corporate documentation which shows the gross undercapitalization of MINTRANS LTD., when she submitted her documents to the Court, which underscores why an entity in Phoenix's position needs discovery to present a full picture to this Court concerning the interrelationship and manipulation Li Wei of her supposed innocent MINTRANS and her prior, fictitious employer.

Returning to the events surrounding the claims which form the subject matter of this dispute, after LI WEI chartered the two vessels in the fictitious name "MINERAL TRANSPORTATION LIMITED", the vessels performed, cargoes were loaded and transported to the United States in what is commonly known as the "MTL" service.  MTL is known in the business as an entity which transports ferroalloy products from these producing facilities in

---

1  Phoenix's investigation did reveal an entity named "**Minerals** Transportation Limited," and that entity may have been the entity under which LI WEI was ostensibly working, but from which she managed to trade vessels for her own account by manipulating the name of the charterer and dropping the "s". (Compare MINERAL TRANSPORTATION LIMITED identified in the Defendant's declarations as her purported employer with the name of the charterer on the two charter parties – it matches precisely, but there is no corporate entity by that name anywhere in China). *See also* Gutowski Decl., Ex. A (Certificate of Incorporation for "**Minerals** Transportation Limited").

Dongzhan, China to the U.S. Gulf and U.S. East Coast. As outlined in the Fu Declaration, LI WEI was the principal in the MTL operation and was generally known as the party chartering the vessels. What was not known, however, until now was that she was actually fixing vessels for her own account under the "MTL" banner, and that she then hastily left the company in the spring of 2006 when shareholders of the entity discovered that she was performing trades for her own account. (Yu Decl., ¶¶24-25).

As outlined above, apparently aware that her independent activities had become known, LI WEI in the spring of 2006 caused to be formed a shell company called "MINTRANS LTD." to capitalize on the acronym "MTL" and set up a new operation which would, to the commercial world, appear as a mere change in office location but not a substantive change in corporate identity. She advised cargo brokers like Mr. Frank Yu, that she was simply changing her name to MINTRANS LTD. (which conveniently matched the "MTL" acronym) but was otherwise carrying on the MTL trade. What she did not reveal, however, was her plan to simultaneously shed any former debt, or limit that eventual exposure to her new entity (MINITRANS LTD.) by forming that entity with virtually no capital, and, in effect, yet another an instrumentality of herself. As outlined more fully in the Yu Declaration, and in order to maintain the appearance of a seamless transition, however, she continued to negotiate the PHOENIX claims but after having dragged the matter out for months, eventually rejected them on the basis that these were trades done by MINERAL TRANSPORTATION LIMITED, and thus did not present any exposure to her or new instrumentality, MINTRANS LTD. In point of fact, however, having chartered vessels in the name of a fictitious, non-existent corporate entity (*i.e.* MINERAL TRANSPORTATION LIMITED), she in effect created personal liability for herself and by virtue of the manner in which she now trades as MINTRANS LTD., liability for her debts can be

imposed on her alter ego as well.

A party in Phoenix's situation is always at a disadvantage in these types of situations because it does not have available to it all of the evidence that is necessary in order to make out the manipulation. What is clear is that this situation is far from the simple corporate identification issue portrayed in the Declarations submitted before this Court, and indeed, Li Wei's own presentation is itself a subterfuge. She needed to portray this subterfuge because she had chartered the vessels in the name of her fictitious entity, and needed to maintain that fiction to distance her latest corporate creation from exposure.

Under these circumstances, and as discussed more fully, PHOENIX has thus clearly established a basis for further discovery. Under no circumstances, where an applicant to vacate has mislead the Court, should the attachment be vacated until PHOENIX has had a full opportunity to explore and develop the evidence necessary to tie LI WEI to the contracts and impose the debt on her latest corporate entity.

## POINT I

### AN ATTACHMENT CANNOT BE VACATED IN CIRCUMSTANCES WHERE A CLAIMANT DEMONSTRATES A REASONABLE BASIS FOR INQUIRY AS TO THE TRUE EXISTENCE OF THE DEFENDANT

It is common ground that, at an E(4)(f) hearing, the burden is on the plaintiff to demonstrate why the attachment should not be vacated. Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends upon the issues in controversy. Salazar v. The Atlantic Sun, 881 F.2d 73, 79 (3d Cir. 1989); Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A., 169 F.Supp.2d 1341, 1357-59 (M.D.FL. 2001). The standard generally is that "the plaintiff must demonstrate that 'reasonable grounds' exist for the attachment." Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.,

05-7955, 2006 U.S. Dist. LEXIS 77033, *7-8 (S.D.N.Y. Oct. 23, 2006) (citation omitted). The case law of this Circuit, however, is clear that the burden of proof at this stage of the proceedings does not require the plaintiff to demonstrate its case with the same level of proof as required at trial. Wajilam Exports, 2006 U.S. Dist. LEXIS 77033, *9. This proposition is no less true when a plaintiff alleges a successor in interest theory of liability or alter ego relationships between defendants. See generally, Linea Naviera, 169 F. Supp. 2d at 1361 (holding that a Rule B attachment issued against an alleged alter ego of the defendant should not be vacated because probable cause of commonality and control existed at time writ of attachment issued); A. Coker & Co. v. Nat'l Shipping Agency Corp., No. 99-1440, 1999 U.S. Dist. LEXIS 7442, *3-5 (E.D.La. May 18, 1999) (maintaining attachment upon a finding that reasonable grounds for alter ego relationships between defendants).

The purpose of the Rule E(4) hearing is for the plaintiff to show there were reasonable grounds for the issuance of the writ of attachment. To sustain its burden on a motion to vacate, plaintiff only needs to demonstrate the three items required under Rule E(4)(f): 1) that the cause of action arises within the Court's admiralty jurisdiction; 2) the defendant cannot be found within the district; and 3) the defendant has property within the district that has been restrained. Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002) and Aqua Stoli Shipping Ltd. v. Gardner Smith PTY, 460 F.3d 434 (2d Cir. 2006). Phoenix respectfully submits that it has satisfied the above three requirements. Accordingly, the attachment should be maintained.

MINTRANS LTD., however, seeks to challenge the substance of Phoenix's complaint, which challenge can only occur after a full discovery on the alter ego issue has been conducted. Tramp Oil & Marine Limited v. Ocean Navigation (Hellas), 20004 U.S. Dist. LEXIS 7974, *4 (S.D.N.Y. May 7, 2004) (holding that Rule B attachment should not be vacated and that

appropriate vehicle for challenging alter ego allegation was summary judgment motion, not a motion to vacate attachment).

In addition, this Court has ample authority to maintain the attachment based upon the new evidence revealed by the defendant's own admissions, and as otherwise now described in the Amended Complaint. See, e.g., World Reach Shipping Ltd., v. Industrial Carriers, Inc., No. 06-3756, 2006 U.S. Dist. LEXIS 83224 (granting leave to file amended complaint to add new defendant based on alter ego status); Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06-1979, 2006 U.S. Dist. LEXIS 60770 (S.D.N.Y. Aug. 25, 2006) (leave to file Amended Complaint based on alter ego allegation granted, and release of attached funds stayed). In light of the evidence now available, and the continued effort by the Defendant to maintain its corporate subterfuge (including the submission of false declarations) Phoenix submits that it has demonstrated a well-founded basis of a successor in interest and/or alter ego relationship among LI WEI, her prior fictitious entity (MINERAL TRANSPORTATION LIMITED) and her latest corporate creation (MINTRANS LTD.). Such corporate machinations support the maintenance of the attachment. At a minimum, given the factual circumstances concerning LI WEI's complete domination and control of MINTRANS LTD. and her prior use of a fictitious, non-existent MINERAL TRANSPORTATION LIMITED to enter into the type of contracts as issue in this action, Phoenix is entitled to seek discovery to fully develop the corporate and individual relationships.

As outlined by the Second Circuit, in an attachment setting, if the defendant or garnishee could nullify the effects of the attachment with mere denials, every attachment could be summarily defeated with such statements. Maryland Tuna v. M/S BENARES, 429 F.2d 307, 322 (2d Cir. 1970). Rolls Royce Industrial Power (India) v. M/V FRATZIS M, 1996 A.M.C.

390, 392 (S.D.N.Y. May 23, 1995) (Haight, J.) ("[t]he sensible first step is to grant plaintiffs expedited discovery" in the context of a motion to vacate an attachment on grounds the damages were excessive)  This argument is all the more compelling in successor in interest - alter ego situations such as the instant one, where the evidence of corporate domination or manipulation is shielded and rarely available to a plaintiff in Phoenix's situation. PHOENIX cannot, therefore, be expected to fully establish its these relationships now, but has clearly met the threshold burden of Rule E(4)(f) hearing.  This was precisely why, in Maryland Tuna, Id at 322, the Second Circuit confirmed the appropriateness of allowing full discovery in an alter ego type situation.  Otherwise, the Court noted, a defendant could always defeat an attachment, and thus the Court's jurisdiction, on the basis of a mere denial of any relationship with the other corporate entity.  Indeed, courts expect that discovery will be undertaken in the context of a challenge to an attachment under Rule E(4)(f). See, generally,  Allied Mar., Inc. v. Rice Corp., 2004 U.S. Dist. LEXIS 20353 (S.D.N.Y. Oct. 12, 2004) (court was critical of plaintiff's failure to take discovery in a challenge to an attachment, stating that such discovery would have been permitted as a matter of course). .

Accordingly, at this stage, Phoenix need only produce evidence sufficient to show that the attachment is supported by reasonable grounds but does not bear the burden of proving the merits or all the facts that will support an alter ego claim at the end of the day.

**POINT II**

**THE EVIDENCE THUS FAR ESTABLISHS THAT PHOENIX HAS MADE
OUT ITS PRIMA FACIE BURDEN OF DEMONSTRATING A SUCCESSOR
IN INTEREST and/or ALTER EGO RELATIONSHIP, WHICH SHOWING
WARRANTS THE MAINTENANCE OF THE ATTACHMENT AND THE
TAKING OF DISCOVERY**

Mr. Yu's Declaration and the documentation presented to this Court by LI WEI and her Hong Kong counsel Robert Lee demonstrate that LI WEI has engaged in a well-orchestrated manipulation of a non-existent company, MINERAL TRANSPORTATION LIMITED, and the complete domination of an existing company, MINTRANS LTD., to avoid the debts she had incurred while she was trading in a manner which exposed her (as well as her principals) for liability under the charters. Mr. Yu, the cargo broker who handled the charter parties that are the subject of this action, has confirmed that LI WEI was the only individual who negotiated the M/V YTHAN and the M/V MARGIE charters. (Yu Decl., ¶¶3-5, 8). He was generally familiar with LI WEI on the basis of prior trades he had consummated with her and was also familiar with her company, which she referred to as "MTL" and which was commercially known as MTL. (Yu Decl., ¶6). LI WEI also operated out of an office in Beijing called "MTL." Significant, for purposes of the transactions at issue here, LI WEI identified the name of the charterer as "MINERAL TRANSPORTATION LIMITED" and that was the name she inserted into the two charter parties. (Yu Decl., ¶7). In her declaration in support of the motion to vacate, LI WEI informs the Court that she worked for this same entity "MINERAL TRANSPORTATION LIMITED." Further, Defendants' Hong Kong counsel attests the same false facts, annexing company records from the Hong Kong Companies Registry pertaining to an entirely different company, "**Mineral Resources (China) Company Limited**" as support. Far from supporting the corporate separateness of these supposed entities, the declarations and documents submitted establish that LI WEI was trading for herself, under the name of a non-existent corporation, thereby incurring liability for herself, her successor shell MINTRANS and her former principals. .

Mr. Yu also attests that in the summer of 2006, at a time when, it is undisputed,

MINTRANS LTD. had already been formed, LI WEI continued to discuss settlement of the subject claims. (Yu Decl., ¶16). And while LI WEI had moved her office location by then, she was still trading under the banner of MTL and had advised Mr. Yu that all that had transpired was mere name change. At no time did LI WEI inform Mr. Yu that MINERAL TRANSPORTATION LIMITED had been a sham company. Nor, for that matter, and despite an initial comment in July of 2006 that responsibility for the debt rested with the old (and now revealed to be fictitious entity) MINERAL TRANSPORT LIMITED, did she maintain that position  Instead, she continued to negotiate, inviting Mr. Yu to meet for purposes of resolution of the claims at a point in time (fall of 2006) where she was, by her own admission, only operating as MINTRANS LTD. Thus, LI WEI purposefully created the impression in the industry that she was simply changing name/addresses, but that MTL was still in operation, buying time to distance her latest creation from exposure. (Yu Decl., at ¶ 17 - 22).

Eventually, Mr. Yu discovered that a Mr. Ren had an interest in MTL. Mr. Ren revealed that LI WEI was in fact the legal representative of MTL (most likely "**Minerals** Transportation Limited," the only company for which corporate records were found with a similar name, see Gutowski Decl. Ex. A). Mr. Ren further noted that while LI WEI worked for "MTL," he discovered that LI WEI had been trading for her own account under the MTL banner. (Yu Decl., ¶24). He thus claimed that these were transactions on her account that had nothing to do with his entity "MTL." (Yu Decl., ¶25), leaving PHOENIX with no one against which to claim.[2]

Indeed, it is precisely what Li Wei sought to achieve, and why LI WEI now seeks to avoid discovery. This is so because it would highlight her personal exposure in entering into trades such as the ones at issue here, that she has mislead the Court into believing that she was

---

[2]  Mr. Ren's protests to the contrary, his MTL entities (now identified as defendants in this action) remain equally liable for the claims under the two charters under basic contract and agency principles. He appointed Li Wei as general legal representative and allowed her to trade under the MTL banner.

employed by MINERAL TRANSPORTATION LIMITED, a corporation that has never existed because this was the name that LI WEI inserted in the M/V YTHAN and the M/V MARGIE charter parties, and why her current entity MINTRANS LTD is equally exposed as an instrumentality of herself and a successor to her prior fictitious entity.

Phoenix respectfully submits that the additional facts it has been able to develop through its investigation demonstrate that LI WEI used the name of a non-existent corporation to contract with innocent third parties and that, once her deceitful practices became known, she created another company MINTRANS LTD., to avoid any liabilities incurred by the non-existent company. Further, as the documentary evidence establishes, MINTRANS LTD. is woefully undercapitalized with a mere $1,279.61. LI WEI has been able to perform this corporate charade because she is the sole shareholder and owner of MINTRANS LTD.

There is no set formula employed in determining when and under what circumstances an alter-ego successor in interest finding is appropriate, but instead, each case generally turns on its own facts and a review of a series of factors. Wm. Passalacqua Builders v. Resnick Developers, 933 F.2d 131, 139 (2d Cir. 1991). Generally, a veil is pierced against the parent or stockholder where it can be demonstrated that the parent or controlling shareholder was the "true" or prime mover behind the subsidiary or the corporation. Carte Blanche (Singapore) v. Diners Club Intern, 758 F. Supp. 908, 918 (S.D.N.Y. 1991) (dummy or shell corporation is used to carry on the business of the principal); Oriental Commercial and Shipping v. Rosseel, N.V., 702 F. Supp. 1005, 1021 (S.D.N.Y. 1998) ("if the corporation is a 'dummy' for its individual stockholders who are in reality carrying on the business of their personal capacities for purely personal rather than corporate ends then stockholders must be personally and financially responsible").

The factors utilized in determining whether to pierce a corporate veil include items such as: (1) inadequate capital; (2) maintenance of inadequate capital during the life of the corporation; (3) non-compliance with corporate formalities and requirements; (4) lack of attention to the corporate form including stockholders and directors' meetings; (5) no payment of dividends and little or no cash assets; (6) financial manipulation between the entities in the organization; (7) interconnected transactions with no ostensible consideration or basis; (8) reliance on loans or advances from members of the group and (9) the incorporation of the subsidiary caused by the parent or principal. Anderson v Abbott, 321 U.S. 349 (1944); Wm. Passalacqua Builders, 933 F.2d 131; William Wrigley Jr. v. Waters, 890 F.2d 594, 601 (2d Cir. 1989).

And while the veil-piercing analysis encompasses multiple factors, the Supreme Court has stated that, "[a]n obvious inadequacy of capital, measured by the nature and magnitude of the corporate undertaking, has frequently been an important fact in cases denying stockholders their defense of limited liability." Abbot, 321 U.S. at 362. Undercapitalization is measured in terms of the size of the corporate undertaking. Id.; Eagle Transport Ltd. v. O'Connor, 470 F. Supp. 731, 733 (S.D.N.Y. 1979).

The evidence submitted by Phoenix demonstrates that MINTRANS was woefully undercapitalized when it was formed. (Gutowski Aff., Ex. B). The Memorandum of Association of MINTRANS LTD. establishes that the capital of the company is "HK$10,000.00 divided into 10,000 shares of HK$1.00," or a capital of USD1,279.61 (at the exchange rate of 1HKD = 0.127961 USD). Phoenix respectfully submits that a capitalization of a mere $1,279.61 constitutes a gross undercapitalization especially in an industry that conducts multimillion dollar transactions in chartering vessels and moving cargoes around the world. Further exemplifying

the fact that MINTRANS LTD. is grossly undercapitalized – as measured by the company's undertaking – is the capitalization of the entity named "Mineral Resources (China) Company Limited," for which Defendant has presented documentation. That documentation shows that the capitalization of "Mineral Resources (China) Company Limited" is "HK$10,500,000.00," or USD1,343,314.43. (Lee Decl., Ex. 2). It is therefore beyond peradventure that a capitalization of merely $1,279.61, in the industry in which MINTRANS LTD. carries on business, is woefully inadequate.

For example, in <u>Melikian v. Corradetti</u>, 791 F.2d 274 (3d Cir. 1986), the Third Circuit reversed the district court's dismissal of plaintiff's action, determining that plaintiff had alleged sufficient facts to support the application of the veil-piercing doctrine. Specifically in reference to the undercapitalization allegation, the Court remarked that the complaint alleged that the subsidiary had been incorporated with a capital of only $2,500 and that it had assets worth less than $500 while engaging in a $44 million transaction with plaintiff. *See also* <u>Slottow v. American Casualty Co. of Reading, Pa.</u>, 10 F.3d 1355 (9th Cir. 1993) (initial capitalization of only $500,000, when corporation handled trust agreements in the magnitude of millions of dollars, "was woefully inadequate"). Here, based on the documents MINTRANS LTD. tried to hide, there is certain proof that the company's capitalization of a mere $1,279.61 is grossly inadequate for the corporate undertaking.

The "inquiry into corporate capitalization is most relevant for the inference it provides into whether the corporation was established to defraud its creditors or other improper purpose such as avoiding the risks known to be attendant to a type of business." <u>Trustees of the National Elevator Industry Pension, Health Benefit and Educational Funds v. Lutyk</u>, 332 F.3d 188, 197 (3d Cir. 2003). Indeed, the substantial prejudice that Phoenix will suffer if the motion to vacate

the attachment is granted, without Phoenix having had an opportunity to flush out the full facts surrounding its alter ego claims, is all the more compelling in this case precisely because of MINTRANS LTD.'s gross undercapitalization by LI WEI. Other than the bare assertion that MINTRANS LTD. is a separate company, LI WEI provides no evidence whatsoever of any tangible assets owned by MINTRANS LTD. As the evidence presently stands, MINTRANS LTD. possesses the ludicrous sum of $1,279.61 to meet creditors' claims.

Moreover, LI WEI claims that MINSTRANS LTD. is ostensibly a separate company from MINERAL TRANSPORTATION LTD. because of the difference in directors and addresses. But this is an empty statement because MINERAL TRANSPORTATION LIMITED has not, and does not, exist. (See discussion above.) The only documentary evidence presented to this Court by LI WEI concerns an entity named **Mineral Resources (China) Company Limited**. Hence, there is no documentary evidence attesting to LI WEI's claims of corporate separateness. Nor has LI WEI submitted any evidence whatsoever that MINTRANS LTD. complies with corporate formalities. This complete lack of evidence from a party who controls and possesses access to the necessary information, powerfully underscores Phoenix's position that LI WEI uses MINTRANS LTD. as her own instrumentality and manipulates the acronym "MTL" to carry on business as usual.

The facts thus far presented by Phoenix and taken as a whole, including the documentation provided by MINTRANS LTD. and LI WEI's admissions, demonstrate that there exist reasonable grounds to maintain the attachment on Phoenix's alter ego claims. In Sea-Terminals, Inc. v. Independent Container Line, Ltd., 1990 AMC 776 (D. Del. 1999), the court upheld an attachment based upon, among other things, alter-ego allegations until further facts could be flushed out after discovery. The plaintiff stevedore had filed a complaint in admiralty

and an accompanying affidavit in support of maritime attachment pursuant to Rule B against

ICL, a Bahamian Corporation which transported goods from the U.S. The complaint also

alleged an alter-ego relationship with a different company, which was challenged.

In denying the motion to vacate, the district court stated:

> The complaint, following "notice pleading" of the Fed. R. Civ. P.,
> alleges that its claims against Independent are for stevedoring and
> related maritime claims. It also alleges three different and
> interrelated theories why Independent is liable for the obligations
> incurred by Caribbean. Independent, of course, in its counter-
> affidavit denies that these claims are maritime in nature or that it is
> liable to Sea-Terminals under any of the three theories for the
> obligations of Caribbean. Caribbean, it contends, is a totally
> separate and unrelated company to Independent. This, of course,
> may or may not be so, but it is too early to decide these issues until
> the facts are fully flushed out after discovery.

Similarly, in Coker the district court was presented with another alter-ego complaint and

attachment, and a challenge by the alter ego that it was separate and distinct. In support of its

position that it had met the probable cause standard necessary to sustain the attachment, plaintiff

noted that it had submitted a financial document listing the alter ego as an affiliate of the

defendant; some evidence showing low capital (in the form of the inability to perform the

charter); and evidence of shared corporate offices. It was upon this basis that the Court upheld

the attachment, noting that while the plaintiff had not definitively established the alter-ego

allegation, the lesser standard of probable cause applied at that stage of the proceeding.

Here, the evidence outlined above is far more compelling than the evidence in Coker and

thus warrants the grant of leave to amend Phoenix's Complaint to set forth its cause of action

under alter-ego principles against LI WEI and maintain the attachment until discovery can be

taken and Phoenix fully develops the facts.

## POINT III

### THE MOTION TO QUASH THE SUBPOENAS IS MERITLESS AND IT IS NOTHING BUT AN ATTEMPT TO PREVENT THIS COURT FROM DISCOVERING HOW LI WEI HAS ORCHESTRATED A CORPORATE SHELL GAME TO AVOID LIABILITIES

It is well-settled in this Circuit that, in the absence of a claim of privilege, a party does not have standing to object to a subpoena directed to a non-party. Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975); Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004). MINTRANS LTD. has not advanced any claims whatsoever that the documentation requested in the Phoenix subpoenas is privileged. Accordingly, the motion to quash should be denied on this ground alone.

In any event, the objections raised by the motion to quash are completely devoid of any merit; in fact, MINTRANS LTD. cites no legal authorities for the various arguments it posits to the Court. First, the service provisions of Rule 5(b) only apply once a party has made an appearance. Moore's Federal Practice, §5.03[1]. MINTRANS LTD.'s counsel was served with subject subpoenas on the day it made its appearance in the action. Even if service were required, the documents have not yet been produced, and thus, MINTRANS LTD. is not in any way prejudiced. Seewald v. IIS Intelligent Information Sys., Ltd., 1996 U.S. Dist. Lexis 22497 at *13-14 (E.D.N.Y. Oct. 16, 1996).

Second, there is no requirement that subpoenas be served by hand upon the third parties. Nothing in Rule 45 of the Federal Rules of Civil Procedure mandates such a requirement. In fact, MINTRANS LTD.'s argument has been previously rejected by courts. King v. Crown Plastering Corp., 170 F.R.D. 355, 356 (E.D.N.Y. 1997) ("the court sees no reason for requiring in-hand delivery for subpoenas served under Rule 45, so long as service is made in a manner that

16

reasonably insures actual receipt of the subpoena by the witness"); Trust v. Kummerfeld, No. 99-3200, 1999 U.S. Dist. LEXIS 19980, *4-5 (S.D.N.Y.  Dec. 29, 1999) ("The language of Rule 45 does not explicitly demand personal service of a subpoena, but instead requires only that a copy be 'delivered' to the person whose attendance or production of documents is sought[;] [s]uch a language 'neither requires in-hand service nor prohibits alternative means of service'"). Accordingly, given that the challenged subpoenas were served by Federal Express, such service was proper and effective for purposes of Rule 45.

Third, the subpoenas are not premature.  Under Rule 26(d), parties do not have to hold a Rule 26(f) conference before taking discovery in proceedings exempted from the initial disclosure requirements of Rule 26(a)(1)(E).  Rule 26(a)(1)(E)(viii) specifically exempts from the requirements of initial disclosure those actions which "are ancillary to proceedings in other courts." Fed. R. Civ. P. 26(a) (1)(E)(viii).  It is undisputed that this is a Rule B action brought in aid of arbitration to secure Phoenix's claims against the Defendant. Thus, this action is exempt from the requirements of Rule 26(f), and Phoenix had no obligation whatsoever to engage in an initial disclosure conference before serving the subpoenas, as erroneously argued by MINTRANS LTD.

Fourth, the subpoenas were proper in providing seven days for the production of documents to third parties. Rule 45 is silent as to what constitutes sufficient time to respond to a subpoena. Courts, however, have ruled that a subpoena returnable seven days after service was proper. See e.g. Schwimmer v. Kaladjian, No. 96-2376, 1995 U.S. Dist. LEXIS 11468, *6 (S.D.N.Y. Aug. 11, 1995). Indeed, given that Rule B actions proceed on an expedited basis, the seven-day period for production of documents was reasonable and warranted by the circumstances of this case. Federal Aviation Administration v. Landy, 705 F.2d 624, 634-35 (2d

Cir.), cert. denied, 464 U.S. 895 (1983) (a deposition on a four-day notice deposition was proper under circumstances).

Fifth, the argument that the subpoenas were not properly issued from the courts in Louisiana and Ohio is nothing but makeweight.[3] Rule 45(a)(2)(3)(B), which Defendants deliberately omit to cite to this Court, prescribes in no uncertain terms that:

(a) Form; Issuance

* * *
(2) A subpoena must issue as follows:

(3) . . . . An attorney as officer of the court may also issue and sign a subpoena on behalf of

* * *
(B) a court for a district in which a deposition or production is compelled by the subpoena, if the deposition or production pertains to an action pending in a court in which the attorney is authorized to practice.

It is undisputed that the challenged subpoenas were issued and signed by an attorney duly admitted to practice law before this Court and correctly identified both this Court and the proceeding's caption and Docket Number as well as the district courts in which the production of documents was compelled. Rule 45 also contains no requirement that a miscellaneous action be filed in the court out of which the subpoena was issued. Accordingly, the subpoenas fully complied with the requirements of Rule 45 and are therefore proper and enforceable.

Phoenix respectfully submits that the patently meritless arguments asserted in MINTRANS LTD.'s motion to quash reveal that LI WEI is desperately seeking to prevent this Court from unearthing the facts that she utilized a fictitious MINERAL TRANSPORTATION LTD. to charter Phoenix's vessels and when her subterfuge was discovered, formed a shell corporation, MINTRANS LTD., to avoid any liabilities while at the same time continuing to

---

[3] MINTRANS LTD. does not challenge the New York subpoenas.

exploit the acronym "MTL" in the industry. This Court should not condone LI WEI's conduct and should deny MINTRANS LTD.'s motion to quash *in toto*.

## CONCLUSION

MINTRANS LTD.'s motion to vacate the attachment should be denied, the application to quash denied, discovery should proceed forthwith, and a new order of attachment should be issued based upon the Amended Complaint against all the defendants, with the funds to remain under attachment.

Dated:  New York, New York
         March 5, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
PHOENIX BULK CARRIERS LTD.

By:  _____
       Peter J Gutowski (PG 2200)
       Manuel A. Molina (MM 1017)
       80 Pine Street
       New York, NY 10005
       (212) 425-1900
       (212) 425-1901 fax